USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

In re: AMERICAN INTERNATIONAL
GROUP, INC. SECURITIES LITIGATION

This Document Relates To: All
Actions
---------------------------------X

04 CIV. 8141 (DAB)
MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

On January 31, 2012, the Court held a Fairness Hearing in this matter to consider Motion for Approval of the Settlement with Defendant American International Group, Inc. ("AIG"), and the Motion for Attorney's Fees and Reimbursement of Expenses. The Court's findings and rulings with regard to these Motions are set forth in this Order, the Transcript of the January 31, 2012 Hearing, the Order and Final Judgment as to American International Group, Inc., the Order Approving Plan of Allocation, and the Order Approving Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff's Request for Reimbursement of Expenses.

I. INTRODUCTION

A. Factual Background and Litigation History

This action, which was filed in 2004, arises from material misstatements and omissions allegedly made by Defendants in connection with disclosures of (1) AIG's alleged involvement in a scheme that included steering contingent commissions to, and

rigging certain insurance bids with, Marsh & McLennan Companies, Inc.; and (2) an alleged accounting fraud at AIG that resulted in the Company restating nearly four years of earnings and adjusting earnings for a fifth year. Lead Plaintiff also alleged that AIG and Defendant Greenberg manipulated the market through the purchase of millions of shares of AIG stock.

During the more than seven years this action has been pending, this matter has been litigated vigorously. The litigation has involved: (1) fully-briefed motion practice, on two separate occasions, to determine the Lead Plaintiff; (2) Motions to Dismiss filed by 23 Defendants; (3) fact and expert discovery related to class certification, followed by a contested Motion for Class Certification involving four days of legal argument and hearings; (4) the review and analysis of more than 53.3 million pages of documents, including more than 12 million pages produced by Defendant AIG; and (5) 97 depositions of fact and expert witnesses.

The Settlement, which was negotiated at arm's length over many years with the help of several mediators, including the Hon. Layn R. Phillips (Ret.), creates a Settlement Fund of $725,000,000.00. The Distribution Amount, which is the Settlement Fund plus interest and less any expenses related to taxes, notice, and Settlement administration, and any attorneys'

fees and expenses award or Lead Plaintiff's award approved by the Court, is to be distributed pursuant to the Plan of Allocation, which is set forth in pages ten through seventeen of the Notice distributed to Class Members.

The Settlement Class consists of: all persons and entities who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive, as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock for stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock for stock transaction, and who were damaged thereby, excluding persons who made timely and valid requests for exclusion from the Class. Named Defendants, members of the immediate families of Named Defendants, parents, subsidiaries, affiliates, officers, or directors of AIG, any entity in which any of the foregoing has a controlling interest, or the legal representative, heirs, successors, and assigns of any of the foregoing, are precluded from making claims under the Settlement.

In an Order dated October 5, 2011, this Court preliminarily approved the Settlement. The Court also approved the Notice for dissemination to Class Members. The Order set a Fairness Hearing

for January 31, 2012, to consider the fairness, reasonableness and adequacy of the Settlement and Plan of Allocation.

B. Fairness Hearing and Consideration of Objections

A Fairness Hearing in this matter was held at 11:00 a.m. in Courtroom 24B on January 31, 2012. Steve A. Miller appeared on behalf of Objector Steve A. Miller, P.C. Profit Sharing Plan.[1] (See Docket #607.) Mr. Miller objected that the claims procedure in this case was needlessly complicated, but conceded that in his particular case he had no trouble meeting the requirements for filing a claim. Lead Counsel confirmed that no complaints had been received from Class Members regarding the claims procedure. Accordingly, the Court overruled this objection as speculative.

Mr. Miller also objected that a 13.25% award of attorneys' fees was excessive. As set forth below, however, this Court found that a 13.25% attorneys' fee award was in line with awards in similar cases, reflected the complexity of this case and Lead Counsel's efforts, and actually resulted in a slightly negative lodestar. This objection was overruled.

In his written objection, Mr. Miller opined that any

---

[1] An additional objection from Rinis Travel Service Inc. Profit Sharing Trust (PST) U/A 06/01/89; Rinis Travel Service Inc. Profit Sharing Plan (PSP) U/A 06/01/89, Alan Rothstein, and Mollye Rothstein, was overruled prior to the Fairness Hearing by Order of this Court dated January 18, 2012 (Docket #612).

4

remaining amount in the Settlement Fund after all distributions have been made should not be returned to Defendant AIG. This Court agrees with Mr. Miller and directs that any funds remaining after all distributions have been made shall be distributed via cy pres distribution to a nonprofit chosen by the mediator. This objection was therefore SUSTAINED.

## II. DISCUSSION

### A. Class Certification

In order to certify finally the Class as defined by the Court's October 5, 2011 Order, the Court will consider the criteria of Federal Rule of Civil Procedure 23(a) and (b). The four prerequisites of Rule 23(a) are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Court finds that the Class is so numerous that joinder of all members is impracticable. Claims Administrator Rust Consulting, Inc. ("Rust") mailed more than 2 million Notice Packets, including 1,756,227 to individual names and addresses

and 1,925 to nominee names and addresses. (Miller Aff. Nov. 30, 2011 (Ex. 3 to Dubbs Decl. Dec. 2, 2011), ¶ 10; Miller Aff. Jan. 12, 2012 (Ex. 1 to Dubbs Reply Decl. Jan. 13, 2012), ¶ 3.)

The Court finds that there are questions of law or fact common to the Class. The Court also finds that under Rule 23(b)(3), these questions predominate over any questions affecting only individual Class Members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The central questions of whether Defendants made false and misleading statements in documents including periodic reports filed with the Securities and Exchange Commission, and whether those alleged misstatements caused AIG Securities to trade at artificially inflated prices during the Class Period, are common to the Class and predominate over questions affecting only individual members. (See Dubbs Decl. Dec. 2, 2011, ¶¶ 40-41.)

The Court finds that the claims and defenses of the representative parties are typical of the claims and defenses of the Class. Lead Plaintiff, like all Class Members, purchased AIG Securities at allegedly artificially inflated prices during the Class Period and claims to have suffered damages because of AIG's alleged material misconduct. Accordingly, the legal theories and evidence Lead Plaintiff would advance to prove its claims would

simultaneously advance the claims of other Class Members. (Mem. L. Supp. Mot. Prelim. Approval, p. 17.)

The Court finds that the representative parties will fairly and adequately protect the interests of the Class. Labaton Sucharow and Hahn Loeser, Court-appointed Lead Counsel for Lead Plaintiff the Ohio State Funds, have zealously and ably represented Lead Plaintiff on behalf of the proposed Class, having expended nearly 260,000 hours in prosecution and investigation of the claims against the settling Defendants. (Dubbs Decl. Dec. 2, 2011, ¶ 183.) There is no conflict or antagonism between the claims of the Ohio State Funds and the other members of the proposed Class.

Finding all criteria of Rule 23 satisfied, this Court finally certifies the Settlement Class for settlement purposes and appoints Lead Plaintiff as Settlement Class Representative and Lead Counsel as Settlement Class Counsel.

### B. Fairness of the Settlement

Under Rule 23(e), to grant final approval of a settlement, the Court must determine whether the proposed settlement is fair, reasonable and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. To find a settlement procedurally fair, the

Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations, and that Plaintiff's Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the Class's interests. To find a settlement substantively fair, the Court reviews the nine Grinnell Factors. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

Procedural Fairness: The Court finds that the Settlement resulted from "arm's length negotiations." Class Counsel possessed the requisite amount of experience and ability, and the parties engaged in the discovery necessary for effective representation of the Class's interests. See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001), citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982).

By the time the Settling Parties reached the Settlement, Lead Plaintiff, through able and experienced Lead Counsel, had (i) opposed Motions to Dismiss by 23 Defendants, including AIG; (ii) completed class discovery, involving many depositions; (iii) moved for class certification; and (iv) completed all fact discovery, including the review and analysis of many millions of pages of documents. (Dubbs Decl. Dec. 2, 2011, ¶¶ 71-139.) Over the course of the case, the Parties engaged in numerous

discussions, both formal and informal, culminating in a mediation session with the Honorable Layn R. Phillips in June of 2010. (Id., Ex. 7.)

Grinnell Factor 1: The Court finds that the litigation is complex, and would likely be costly and lengthy in duration. Had the Parties not reached a Settlement, this case would have likely continued for many more years and would have involved continued discovery, summary judgment motions, and a lengthy and complex trial, all of which would involve considerable expense, and after which the Settlement Class might have obtained a result far less beneficial than the one provided by the Settlement. (Mem. L. Supp. Mot. Approval, p. 10.)

Grinnell Factor 2: The Court finds that the reaction of the Class to the Settlement has been positive. With more than 2 million Notice Packets mailed to potential members of the Settlement Class and nominees, there were only 70 requests for exclusion, of which 26 were timely and valid, and only two objections. (See Miller Aff. Jan. 12, 2012; Docket ##605, 607.)

Grinnell Factor 3: The Court finds that proceedings have progressed and sufficient discovery has been completed to understand Plaintiffs' claims and negotiate Settlement terms. As noted above, this litigation has taken years and has involved extensive discovery and briefing on Motions to Dismiss and class

9

certification issues.

<u>Grinnell Factors 4 and 5</u>: The Court finds that the risks of establishing liability and damages are significant.  One of the frauds alleged involved hundreds of separate insurance transactions.  Proof of wrongdoing would have to be established for each allegedly improper transaction separately.  Moreover, the case involves violations of complex accounting rules that might not be understood easily by a jury.  (Mem. L. Supp. Approval, p. 14.)

<u>Grinnell Factor 6</u>: The Court finds that the risk of maintaining the class action through the trial neither weighs for nor against approving the Settlement in this case.

<u>Grinnell Factor 7</u>: The Court finds that Defendants' ability to withstand a judgment greater than the Settlement weighs in favor of approval. Over the course of this case, AIG was teetering on the brink of insolvency, and required a Government bailout in September 2008.  (Dubbs Decl. Dec. 2, 2011, ¶¶ 58-70.)

<u>Grinnell Factors 8 and 9</u>: The Court finds that the Settlement is reasonable in light of: (a) Plaintiffs' best possible recovery, and (b) the attendant risks of litigation. The $725 million Settlement represents a recovery of 13.18% of the $5.5 billion in "maximum recoverable damages" in this case. (Coffee Decl. Nov. 30, 2011 (Dubbs Decl. Dec. 2, 2011, Ex. 8), ¶

22.)  In light of the significant risks involved in the litigation, the recovery is an excellent result for the Settlement Class.

Having considered the procedural and substantive factors, the Court find the proposed Settlement to be fair, reasonable and adequate under Rule 23 and THE SETTLEMENT IS HEREBY APPROVED.

C.  Reasonablenss of the Plan of Allocation

"When formulated by competent and experienced class counsel," a plan of allocation of net settlement proceeds "need have only a reasonable, rational basis." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D.436, 462 (S.D.N.Y. 2004).  Here, the Plan of Allocation, which is described in the Notice, apportions the recovery among Settlement Class Members.  Those who purchased common stock and options will recover a larger portion of the Settlement than those who purchased the bonds, in recognition of the particular risks involved in establishing loss causation and market efficiency for the bonds.  The Plan also apportions recovery to take into account the strength of potential claims relative to the time of the purchase or sale of AIG Securities, and to account for distributions from the Fair Fund created in SEC v. American International Group, Inc., 06 Civ. 1000 (S.D.N.Y.) (LAP).

11

As discussed above, the Plan of Allocation as set forth in the Notice allows for the possibility that unclaimed funds will be returned to Defendant AIG. The Court hereby directs that those funds shall instead be distributed via cy pres distribution to a nonprofit organization chosen by the mediator, Judge Layn R. Phillips.

In all other respects, the Plan of Allocation represents a fair and equitable method for allocating the Distribution Amount among Authorized Claimants and is HEREBY APPROVED.

D. Attorneys' Fees and Expenses

To ensure the appropriateness of attorneys' fees and costs, the Court will now review the six Goldberger criteria. Goldberger v. Int. Resources, 209 F.3d 43, 50 (2d Cir. 2000).

Goldberger Factors 1 and 2: As discussed in the "Procedural Fairness" section above, the Court finds that Counsel have expended considerable time and labor on behalf of Plaintiffs and the litigation is complex and of large magnitude.

Goldberger Factor 3: As discussed in Grinnell factors 4, 5, and 6 above, the Court finds that the risks of litigation for Plaintiffs are substantial.

Goldberger Factor 4: The Court finds that the representation of Class Counsel is of high quality. Lead Counsel have extensive

experience in complex litigation and are nationally known leaders in the field of securities class actions. (Dubbs Decl. Dec. 2, 2011, ¶¶ 185-86.)

Goldberger Factor 5: The Court finds that in relation to the Parties' Settlement, the requested attorneys' fees of 13.25% are reasonable. As John C. Coffee points out in his Declaration to this Court, this Settlement is unique in that "it appears to have recovered a much higher percentage of the maximum estimated damages than characteristically occurs in securities class actions; and Lead Counsel is seeking to recover slightly less than its lodestar. . . ." (Coffee Decl. Nov. 30, 2011, ¶ 2.)

The requested fee award in this case is well in line with fee awards in cases with similar settlement amounts. See, e.g., In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.30% on a Settlement Fund of $586 million); Carlson v. Xerox Corp., 596 F. Supp. 2d 400 (D. Conn. 2009) (awarding 16% on a Settlement Fund of $750 million). Furthermore, Lead Counsel obtained a Settlement that reflects as much as 13.18% of the maximum recoverable damages in this case, while the typical recovery in class actions involving between $1 billion and $5 billion of investor losses is 1-2%. (Coffee Decl., ¶¶ 21-22.)

Goldberger Factor 6: The Court finds that public policy

13

supports granting attorneys' fees "that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d 229, 236 (S.D.N.Y. 2005). This Court finds that an award of 13.25% of the Settlement Fund promotes the valuable public policy interests at stake.

Expenses: "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." In re Independent Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 (S.D.N.Y. 2003). This Court finds that expenses in the amount of $8,257,111.29 were reasonable and necessary to the prosecution of this Action. The categories of expenses for which Counsel seek reimbursement are the types of expenses routinely charged to hourly paying clients including, inter alia, fees for experts and consultants, filing fees, and discovery expenses. (Dubbs Decl. Dec. 2, 2011, ¶¶ 128-32, 189-95.) Having conducted the Goldberger analysis, the Court finds attorneys' fees of 13.25% of the Settlement Fund to be reasonable and those attorneys' fees are HEREBY APPROVED. Likewise, the Court finds attorneys' expenses of $8,257,111.29 reasonable and those expenses are HEREBY APPROVED.

Class Representative Compensation: "Courts in this Circuit routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." Hicks v. Stanley, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); see also In re Marsh & McLennan Cos., Inc. Sec. Litig., NO. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009), at *21. Here, the request of OPERS and STRS Ohio for reimbursement of $71,910.00 in lost wages related to their active participation in this action is reasonable, and those expenses are HEREBY APPROVED.

SO ORDERED.

Dated:   New York, New York
         February 2, 2012

                                    _____
                                    Deborah A. Batts
                                    United States District Judge